In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3262

Rebecca Vela,

Plaintiff-Appellant,

v.

Village of Sauk Village,
d/b/a Sauk Village Police Department,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 C 1199--David H. Coar, Judge.

Argued April 17, 2000--Decided June 22, 2000

   Before Posner, Chief Judge, Fairchild, and
Diane P. Wood, Circuit Judges.

   Fairchild, Circuit Judge.  Rebecca Vela,
a female Mexican-American police officer
with the Sauk Village Police Department,
brought this action against the Village
under the Civil Rights Act of 1964, 42
U.S.C. sec. 2000e et seq. ("Title VII"),
and 42 U.S.C. sec. 1983, alleging that,
during the course of her employment, she
suffered disparate treatment because of
her sex and national origin, retaliation
for filing a charge of discrimination
against the Village, and sexual
harassment. The district court granted
summary judgment in favor of the Village.
The two critical issues are (1) whether
Vela can pursue in this Title VII action
a claim of sexual harassment which she
made orally to an agency representative,
but which the representative omitted from
her Equal Employment Opportunity
Commission (EEOC) charge when he typed
it, and (2) whether Vela has sufficiently
shown a genuine issue of fact as to a
Village custom or policy of permitting
sexual harassment so as to impose sec.
1983 liability on the Village. The

district court answered both questions in the negative, and we affirm.

Vela has been a police officer for the Village since April 1993. In November 1997, she filled out an intake form at the Illinois Department of Human Rights (IDHR) as a preliminary to an EEOC charge against the Village. In response to one question as to the type of discrimination she wanted to have investigated she circled "unequal terms and conditions". She also circled "harassment" and "failure to promote", but these were crossed out. She testified that the IDHR intake officer crossed them out and told her to initial the cross-outs, although she had orally informed him of the conduct she claimed constituted sexual harassment. In response to a question why she felt she was discriminated against, she wrote only "See attached copies/pages", but those are not in the record, nor is there testimony describing their contents.

Two days later Vela filed with IDHR (an EEOC designated agency, 29 C.F.R. sec.sec.1601.74; 1601.80) a charge of discrimination. On the form she checked "sex" and "national origin" as bases of discrimination against her. In the part of the form asking for the "particulars", she listed three incidents in which she was treated differently from non-Mexican male officers: being required to take a drug test after an accident with a squad car, being reprimanded for failing to follow a work procedure, and being reprimanded for failing to use "spell check". The charge, which she testified was typed by the intake officer, did not describe the harassing conduct which she said she had described to him.

After receiving a right to sue letter, Vela brought this action. Her complaint alleged that she had been subjected to repeated sexual harassment including widespread distribution of lewd and lascivious pictures, sexual jokes told to and about her, lewd and lascivious gestures, condoms left in the glove box of patrol cars, repeated comments about her body, sexual behavior and national origin./1 Only one item in the complaint could have reflected the acts described in the charge, i.e., "Plaintiff treated differently from male officers in administrative procedures". She also

alleged that her shift was changed in retaliation for making a complaint about sexual harassment. Count I sought relief under Title VII and Count II claimed a denial of equal protection and sought relief under sec. 1983.

The Village moved for summary judgment, grounded in part on her failure to include a claim of sexual harassment in her EEOC charge, and lack of evidence that sex discrimination or harassment resulted from Sauk Village policy. In its order granting summary judgment, the district court held that none of the instances of disparate treatment described in Vela's EEOC charge was an adverse employment action; likewise with the shift change she alleged was retaliation. Vela does not challenge these decisions on appeal. She does argue that the court erred in refusing to consider her claim of sexual harassment because it did not appear in her EEOC charge, and in holding that she did not produce evidence of a Village custom or policy of harassment so that the Village could be found liable under sec. 1983.

We review the grant of summary judgment de novo. See Simpson v. Borg-Warner Automotive, Inc., 196 F.3d 873, 876 (7th Cir. 1999).

I.  Failure to charge harassment.

Vela argues that her charge was sufficient because she checked "sex" as the basis of the discrimination against her, and sexual harassment is a type of discrimination because of sex.  But our caselaw makes it clear that the charge must be more specific. "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that are not included in her EEOC charge. . . . For allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). "Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert

forms of sex discrimination." Id. at 501.

We acknowledge that a claim in a civil action need not be a replica of a claim described in the charge, but there must be "a reasonable relationship between the allegations in the charge and the claims in the complaint," and it must appear that "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." Id. at 500. In the case before us, Vela's claim of sexual harassment, stated in her complaint, is wholly diverse from the claim of disparate treatment described in her EEOC charge. It is not reasonably related, and the charge is therefore not an adequate predicate for it. See Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 920 (7th Cir. 2000) (employer's decision to terminate worker not reasonably related to subsequent decision not to rehire worker during a recall); Novitsky v. American Consulting Engineers, L.L.C., 196 F.3d 699, 701-02 (7th Cir. 1999) (claim of failure to accommodate plaintiff's religion not reasonably related to EEOC charge discussing discrimination on bases of age and religion, even where plaintiff described in intake form an incident that supported her failure to accommodate theory); cf. Jenkins v. Blue Cross Mut. Hosp. Ins., Inc., 538 F.2d 164, 167-69 (7th Cir. 1976) (en banc) (plaintiff sufficiently alleged facts supporting claim of sex discrimination in EEOC charge to proceed with sex discrimination claim in court, despite plaintiff's failure to check the box for sex discrimination on the charge).

There are cases where courts have looked beyond the four corners of the EEOC charge form. "Allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." See Cheek, 31 F.3d at 502, citing Rush v. McDonald's Corp., 966 F.2d 1104, 1110-11 (7th Cir. 1992) (plaintiff's handwritten "EEOC Affidavit" submitted the same day as her EEOC charge) and Box v. A & P Tea Co., 772 F.2d 1372, 1375 (7th Cir. 1985) (handwritten additions to typed charge). A later case is Sickinger v. Mega Systems, Inc., 951 F.Supp. 153, 157-58 (N.D. Ind. 1998) (Charge Questionnaire,

filled out the same day as the charge was filed, under particular circumstances where the employer could not claim surprise at the claim stated fully in the questionnaire, but not in the charge). In all three examples, the outside allegations were in writing. In the case before us the only document external to the charge is the intake form, and the indication thereon that she claimed harassment was not only crossed out, but the cross-out was initialed by her.

Vela argues that she orally informed the intake officer of the facts of her claim of sexual harassment, and that in directing her to cross out the reference to harassment on her intake form and by omitting the claim of harassment when he typed the charge, he misled her. We hold, however, that an oral charge, if made as she testified, not reflected in nor reasonably related to the charge actually filed, is not a sufficient predicate for a claim of sexual harassment in her civil action. 42 U.S.C. sec. 2000e-5(b) requires that, "Charges shall be in writing under oath or affirmation" and 29 C.F.R. sec. 1601.9 makes the same requirement. No case suggests that an oral statement to an agency representative is adequate, and notice of such a statement cannot be expected to reach the employer./2 See Novitsky, 196 F.3d at 702 (court rejects plaintiff's reliance on information written on intake form but not included in charge, where plaintiff had opportunity to read charge and obtain professional advice regarding it, and signed charge).

II.  Failure to prove custom or policy of Village.

The Village was the only defendant. Vela alleged that it committed the acts of sexual harassment, retaliation, and disparate treatment complained of "in accordance with its custom and practice". It could be held liable for acts of police department personnel, violating Vela's constitutional rights, only "when execution of [the Village's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . ." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978). Assuming that the allegation that the acts complained of

were done in accordance with the Village's custom and practice was a sufficient claim of a policy or custom of sexual harassment and other discrimination against female police officers, Vela failed to produce evidence that such a policy or custom existed.

"The caselaw has identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 734-35 (7th Cir. 1994) (citations and quotation marks omitted).

Vela does not argue that there was an express policy of sexual harassment or other discrimination against female officers. In fact the Village had adopted an employee manual which prohibited sexual harassment and threatened disciplinary action if it occurred.

Vela did advance two theories to support the custom or policy contention: (1) the chief of police and the city manager had final policymaking authority and the chief brushed aside her complaints of harassment by her supervisor and others; (2) the Village failed to provide adequate relevant training. One may question whether the rejection of complaints as to sexual harassment or other discrimination would establish a deliberate adoption of a policy permitting the practices. But in any event, plaintiff has not demonstrated that Illinois law grants final policy making authority to either of these officers nor any delegation of such authority by the Village board. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986). The

choice to follow a course of action must be "deliberate" in order to establish a policy. Id. Plaintiff fails to establish a policy under her first theory.

Plaintiff's failure-to-train theory is that liability for constitutional violations by police officers attaches to the municipality when the violations result from lack of training. See Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987) and Patzner v. Burkett, 779 F.2d 1363, 1367 (8th Cir. 1985). As evidentiary support she cites to portions of several depositions. In them, City Manager Dieterich testified that there had not been village-wide instruction on sexual harassment and that he believed some of the supervisors might have taken courses at Village expense but that he didn't know for sure. Chief Crafton testified that he had had training in sexual harassment prior to 1993 and an eight hour update, which he had attended with one of the sergeants, in 1995 or 1996. Sergeant Sanders testified that during the last five years there had been no training of sergeants with respect to sexual harassment that he was aware of. In a portion of a deposition in a companion case, but contained in this record, Sergeant Schwertfeger, the principal offender according to Vela, testified that sexual harassment had been covered in a course he took at Northwestern University. We conclude that the testimony just described would not support a finding that the alleged sexual harassment resulted from a lack of training. Plaintiff would have the burden of proof on that point.

The judgment appealed from is affirmed.

/1 There is support for one of her allegations. Vela's supervisor admitted in his deposition that he had made one of the offensive remarks about her, but testified that he didn't intend it to get back to her.

/2 Language in Sickinger, 951 F.Supp at 158, suggests that if a charging party leaves out an intended claim because of being misled by an EEOC representative, she would be entitled to tolling of the period of limitations and could file a charge containing the omitted claim later than otherwise required. See Early v. Bankers Life and Cas. Co., 959 F.2d 75, 81 (7th Cir. 1992). We would not agree, however, that a claim orally communicated to the agency, but omitted through

the latter's fault could, simply on that account,
be treated as if properly filed.