In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-2838

ERIN M. MCHALE,

*Plaintiff-Appellant,*

*v.*

DENIS R. MCDONOUGH,
Secretary of Veterans Affairs,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-2896 — **Harry D. Leinenweber**, *Judge.*

ARGUED MAY 17, 2022 — DECIDED JULY 22, 2022

Before SYKES, *Chief Judge*, and KIRSCH and JACKSON-AKI-
WUMI, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Erin McHale, a pharmacy technician
at the Department of Veteran Affairs, sued her employer, al-
leging disability discrimination and retaliation. But McHale
failed to exhaust her administrative remedies for the disabil-
ity claims because she never complained of discrimination on
the basis of disability to the agency. For the same reason,

McHale cannot carry her prima facie burden for the retaliation claims. We affirm summary judgment on the retaliation claims, but we remand with instructions to dismiss McHale's disability claims without prejudice.

I

A

Erin McHale began employment at the Hines VA Hospital in 2011 as a pharmacy technician. During the summer of 2014, side effects from McHale's diabetes medication began impacting her attendance at work. That November, Idania Mendoza—McHale's supervisor—reduced McHale's performance rating, telling her the reduction was due to her use of sick leave. Mendoza soon after gave McHale an official sick leave restriction. McHale promptly filed a grievance with the union, complaining of unfair treatment based on the sick leave restriction letter and seeking its rescission.

That same month, McHale applied for the position of Procurement Technician. On December 9, 2014, a hiring panel consisting of procurement employees, including Procurement Supervisor Jia Jia Li and McHale's second-level supervisor Donald Lynx, interviewed McHale. Afterward, Lynx told Li he did not want to select McHale due to her frequent sick leave and the restriction put in place by Mendoza.

Passed over for the promotion, McHale contacted the agency's internal EEOC office. She was not selected, she alleged, because of her sick leave restrictions, and she felt she was being discriminated against for filing the union grievance. During the EEOC's subsequent lengthy interviews with McHale, McHale never suggested that she had any disability, only that she and Mendoza had discussed that McHale took

sick leave because she had "several very serious health conditions."

Following McHale's informal complaint and the beginning of the investigation, McHale applied for a second position, Automation Pharmacy Technician. McHale was not selected.

Mediation efforts failed on McHale's original informal complaint, so McHale filed a handwritten formal administrative complaint on April 24, 2015. In it McHale made claims of reprisal for the prior EEOC activity in the form of failure to promote and unfair treatment in the form of the sick leave restrictions.

In November 2015, McHale once again applied for an Automation Pharmacy Technician position. Once again she was not selected. At the end of the more than year-long administrative investigation, McHale asked for a final agency decision on the administrative record. The agency obliged and in January 2017 issued its decision concluding it had not violated the law.

B

Finding no relief in the administrative process, McHale sued in federal court under the Rehabilitation Act of 1973, 29 U.S.C. § 791. She alleged she was disabled due to complications with her diabetes and claimed that: (1) the agency had failed to accommodate this disability; (2) the agency had discriminated against her because of her disability by failing to promote her; (3) the agency had subjected her to a hostile work environment; and (4) the agency retaliated against her—because she had sought an accommodation and engaged in

statutorily protected activity—by failing to promote her and by subjecting her to various other adverse actions.

The agency moved for summary judgment. The district court granted the motion on all claims, holding McHale's failure-to-accommodate and disability discrimination claims were not exhausted during the agency process, her hostile work environment claims lacked support, and her retaliation claims failed for want of comparators.

## II

McHale appeals the district court's grant of summary judgment on the disability, accommodation, and retaliation claims but has dropped the hostile work environment claims. She argues she properly exhausted all her claims and provided sufficient facts to support her prima facie case for retaliation. We review this all de novo. *Vargas v. DeJoy*, 980 F.3d 1184, 1188 (7th Cir. 2020).

## A

To bring a lawsuit under the Rehabilitation Act, plaintiffs must exhaust administrative remedies and cannot bring claims in the lawsuit not in the original EEOC charge. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019); see also *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1319–20 (7th Cir. 1984) (the Rehabilitation Act has the same exhaustion requirements as Title VII). There's no doubt—and no one disputes—that the claims in McHale's district court complaint are different than her claims in the EEOC charge. In the federal complaint, McHale alleged she was disabled due to her diabetes, refused reasonable accommodation by the agency, and faced discrimination during the promotion process because of her disability, all in violation of the Rehabilitation

Act. McHale's administrative claims were not about disability or any failure to accommodate one. The initial December 9, 2014 union grievance alleged only that the agency had discriminated against McHale because of her use of sick leave. In making the informal EEOC complaint on January 23, 2015, McHale likewise informed the EEOC investigator only that "her supervisor putting her on an unwarranted sick leave restriction might be a reason she was not selected" for the December 2014 promotion. And the formal EEOC complaint filed on April 24, 2015 made claims of reprisal for the prior EEOC activity in the form of failure to promote and alleged unfair treatment in the form of sick leave restriction. Neither was a claim about disability discrimination or failure to accommodate, and there was no mention of disability at any point in the grievance process.

McHale seeks shelter under our two-part exception set forth in *Jenkins v. Blue Cross Mt. Hosp. Ins. Inc.*: Federal claims of discrimination can be saved if "reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." 538 F.2d 164, 167 (7th Cir. 1976) (en banc). "This standard is a liberal one … and is satisfied if there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claim in the complaint could reasonably be expected to be discovered in the course of the EEOC's investigation." *Teal v. Potter*, 559 F.3d 687, 692 (7th Cir. 2009).

To satisfy the first prong, claims must at least describe the same conduct and implicate the same individuals. *Id*. at 692. The second prong "requires speculation as to what the EEOC might or might not discover in the course of an investigation." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th

Cir. 1994). Our speculation is cabined by the scope of the EEOC complaint and other written allegations from the administrative proceedings "when it is clear that the charging party intended the agency to investigate the allegations." *Swearnigen-El v. Cook Cnty. Sheriff's Dept.*, 602 F.3d 852, 865 (7th Cir. 2010) (quoting *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000)). It is unreasonable to expect an agency to discover claims outside the scope defined by the plaintiff in those documents. See *Teal*, 559 F.3d at 692. We look to the "factual narrative of the charge" to decide whether the plaintiff raised a claim of discrimination because of a protected characteristic without outright invoking that characteristic. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111 (7th Cir. 1992).

This is a second prong case. McHale's theory is that "[t]he Agency's EEOC investigation of McHale's charge should have led to the EEOC investigator recognizing more specific claims for disability discrimination (and retaliation) under the Rehabilitation Act." But the factual narrative of McHale's administrative activities could not reasonably be expected to lead the investigator to discover discrimination against McHale based on a disability or failure to accommodate.

All of McHale's factual allegations—and so the scope of her EEOC activity—were about her sick leave. She claimed originally that she had been discriminated against because of her sick leave, then later claimed she had been retaliated against for complaining about her sick leave restrictions. McHale never mentioned or alluded to any disability. Instead, she now insists she provided facts that would lead a reasonable investigator to uncover why McHale was taking sick leave and that the agency was discriminating against McHale for that undisclosed disability-based motivation.

But every fact McHale points to concerns sick leave, not disability. Li testified that Lynx informed her that he did not select McHale for the December 2014 position because she had been calling in sick often and Mendoza was placing her on a sick leave restriction. And when McHale discussed her health conditions with Mendoza, it was in the context of the sick leave restrictions.

McHale's administrative claims were about retaliation for seeking sick leave and filing union and EEOC complaints, so the investigation would reasonably be expected to discover whether the sick leave restrictions and non-promotions were indeed done to retaliate against McHale. That is the scope of the complaint and investigation. No requirement existed to search beyond that scope to delve into McHale's reasons for taking sick leave. Nor would the investigation have to discover whether Mendoza and the others knew McHale was disabled and discriminated against her on that basis. The EEOC investigation cannot reasonably be expected to journey beyond the scope of the complaint to delve into McHale's private, undisclosed reasons for the sick leave.

Much of McHale's remaining argument rests on her problems with the EEOC's actual investigation, which she characterizes as dismissive, unthorough, and at times erroneous. But the question is not whether the agency did a sufficiently thorough job investigating McHale's claims. The question is whether, *had* they done a thorough job, they would have found that McHale was disabled and experienced discrimination on that basis. The answer to the first question is debatable. But the answer to the second question is the only one that matters, and the answer is no.

B

At no point in the administrative process did McHale allege she was disabled, nor should the agency have uncovered discrimination claims or failure to accommodate claims based on a disability. This is not just fatal to McHale's disability claims. Her retaliation claims fall too for that very reason. McHale alleged she faced retaliation in the form of failure to promote and other adverse employment actions because she sought an accommodation and because of her union grievance and EEOC activity. But McHale did not exhaust her accommodation claim, so she could not have exhausted her retaliation-for-accommodation claim. And her remaining retaliation claims fail because McHale's union grievance and EEOC activity were not statutorily protected activities under these facts.

Under any method of proving retaliation under the Rehabilitation Act, McHale must show she engaged in statutorily protected activity. *Anderson v. Donahoe*, 699 F.3d 989, 994–95 (7th Cir. 2012); *Burks v. Union Pac. R. Co.*, 793 F.3d 694, 700 (7th Cir. 2015); see also *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 758 n.16 (7th Cir. 2006) (analysis of a retaliation claim under the Rehabilitation Act is identical to that under Title VII). To be sure, "[f]iling a charge with the EEOC *about the alleged discrimination* is the most obvious form of statutorily protected activity." *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011), overruled on other grounds by *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) (emphasis added). Therein lies the key: The charge—whether formal or informal—must be about the discrimination. See *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("Although filing an official complaint … may constitute

statutorily protected activity … , the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class."); *Formella v. Brennan*, 817 F.3d 503, 515 (7th Cir. 2016) (informal EEOC complaint alleging race and age discrimination was statutorily protected activity). Merely complaining in general terms of harassment or discrimination, without specifying a connection to a protected class or providing facts to create such an inference, is insufficient. *Tomanovich*, 457 F.3d at 663.

Union grievances can be statutorily protected activity in retaliation cases, subject to our regular requirements for protected activity. Compare *Lang v. Illinois Dep't of Child. & Fam. Servs.*, 361 F.3d 416, 419 (7th Cir. 2004) (union grievance about racially disparate issuance of cell phones was protected activity because it implicated an allegedly racially discriminatory practice), with *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 563 (7th Cir. 2007) (union grievance was not protected activity, because the grievance's substance "had nothing to do with [discrimination because of a protected class]"). But the bare fact that McHale filed a union grievance and EEOC complaints does not make those activities statutorily protected. She must show that the substance of those complaints implicated her alleged protected class of disability. For the reasons stated in the previous section, she cannot do so. McHale's union and EEOC activity did not indicate or even reasonably lead to the inference that she was discriminated against because she was disabled. The complaints were about mistreatment during the promotion process and her sick leave restrictions, neither of which implicated disability discrimination. Therefore, they were not statutorily protected activity in this case.

Just last year, in a case closely analogous to McHale's, we reasoned:

> A complaint of discrimination is a protected ac-
> tivity … only if the discrimination is based on a
> protected characteristic like race. … Miller
> stated that he felt he was being "targeted" and
> treated unfairly by Bonds, but his EEO com-
> plaint … did not mention a reason for this treat-
> ment and certainly did not attribute it to race.
> Without evidence that he engaged in statutorily
> protected activity, no reasonable jury could
> have found for Miller on his retaliation claims.

*Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021) (quotations omitted). That reasoning directly forecloses McHale's retaliation claims. Like Miller, McHale felt she was being treated unfairly but did not attribute it to her disability.

*         *         *

One final procedural issue needs attention. When a plain-tiff fails to exhaust administrative remedies, her complaint must be dismissed without prejudice. *Teal*, 559 F.3d at 693. And when a district court grants summary judgment in that situation instead of dismissing without prejudice, we have re-manded so that it may correct its mistake. *Id.*; see also *Chaidez*, 937 F.3d at 1008 ("Although the plaintiffs' Count I claims may no longer be timely, … it is worthwhile to follow the proper course of dismissal without prejudice and leave any potential timeliness issue for the plaintiffs to work out."). Accordingly, although we AFFIRM summary judgment on the retaliation claims (Count II of the complaint), we VACATE the district court's judgment as to the disability and failure to

accommodate claims (Count I of the complaint) and REMAND to the district court with instructions to dismiss that part of the complaint without prejudice.